IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PROBST

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESSIE J. PROBST, APPELLANT.

Filed June 9, 2020.    No. A-19-818.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed in part, and in part vacated.

Leslie E. Remus, of Brock Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

In 2017, Jessie J. Probst pled no contest to one count of driving under suspension or while eligible for reinstatement, a Class III misdemeanor, and one count of possession of methamphetamine (meth), a Class IV felony. The Gage County District Court sentenced him on both counts; Probst's sentence on the misdemeanor conviction was a $100 fine and his driving privileges were revoked for 1 year, and his sentence on the felony conviction was 4 years of probation. In 2019, the district court found that Probst had violated the terms and conditions of probation related to his felony conviction, and it ordered new sentences for both of the 2017 convictions. On appeal, Probst claims that resentencing him on the misdemeanor conviction was in violation of his rights against double jeopardy; we agree. He also contends that the district court

imposed an excessive sentence related to the felony conviction; we find no abuse of discretion. We affirm in part, and in part vacate.

BACKGROUND

In April 2016, the State charged Probst with driving under suspension or while eligible for reinstatement (count I, a Class III misdemeanor) and possession of meth (count II, a Class IV felony). During a hearing in May 2017, Probst entered no contest pleas to both counts. According to the State's factual basis, on February 13, 2016, two officers were approaching a house in Gage County, Nebraska, in search of an individual with an active arrest warrant when they observed a vehicle pull into the driveway. The driver, Probst, observed the officers and began pulling out of the driveway; the officers illuminated the vehicle with their flashlights to see if the individual was the subject of the arrest warrant. Probst then parked his vehicle and identified himself to one of the officers. Dispatch verified that Probst's operator's license was revoked on November 27, 2008, for an administrative license revocation with an eligibility date for reinstatement of February 25, 2009. Probst was arrested. A search of his vehicle revealed a "small, red straw with white residue inside [of] it." A forensic scientist later tested the substance and confirmed it was meth. The district court accepted Probst's pleas and found him guilty beyond a reasonable doubt of each count.

On August 17, 2017, the district court sentenced Probst to a $100 fine and a 1-year revocation of his driving privileges on the misdemeanor conviction (count I), and 4 years' probation under a high level of supervision on the felony conviction (count II). One of the terms of his probation required Probst to abstain from the use or possession of alcohol and controlled substances except by prescription and to submit to chemical testing of blood, breath, or urine to determine the presence of alcohol and/or controlled substances, as directed.

Beginning in September 2017, and throughout his term of probation, Probst consistently incurred numerous administrative and custodial sanctions related to various alleged probation violations, such as: testing positive for alcohol and drugs (e.g., meth), frequenting places or associating with persons engaged in illegal activity, failing to report for alcohol and drug testing on many occasions, failing to attend treatment and programs, and failing to report to the probation office. He served a total of 90 days in jail as a result of custodial sanctions. According to a probation officer's allegations filed on December 12, 2018, Probst had obtained an updated substance abuse evaluation at a behavioral health center that October and it was recommended that he complete long-term residential treatment. Probst reported that he did not agree with the recommendation and would not return to treatment. He had not entered into treatment or contacted treatment facilities to have his name placed on the waiting list for a residential bed as of December 12. In February 2019, upon a probation officer's advisement, Probst was ordered to serve a 15-day jail term, which had otherwise been waivable if Probst had been in full compliance with his terms of probation.

In April 2019, the State sought to revoke Probst's probation. On May 17, the State filed an amended affidavit and motion for revocation of Probst's probation. The State alleged that on or about March 15, Probst tested positive for amphetamines and meth. The State further alleged that Probst reported he had used meth after being released from jail on March 13; Probst had already served 90 days in jail for previous custodial sanctions; "Alleged Probation Violation[s]" were

submitted to the district court in November and December of 2018; and Probst failed to report for drug and alcohol testing, as directed, on 11 separate dates from March 21 to May 4, 2019.

In June 2019, the State moved for issuance of a bench warrant for Probst's arrest, alleging it had received an affidavit from a probation officer indicating that Probst had continued to violate the terms of his probation. The accompanying affidavit stated that Probst failed to report for drug and alcohol testing on 11 separate dates from May 9 to June 6 and that between the end of May and beginning of June, the probation officer had tried to contact Probst through different methods with no success. A filing by a probation officer submitted around the same time contained the same allegations as well as one that Probst had failed to appear for a required group meeting on May 8. A bench warrant, dated June 12, 2019, was issued for Probst's arrest. Probst appeared for a hearing on June 19, during which he denied the allegations in the State's motion for revocation of probation.

During a hearing on July 17, 2019, Probst changed his response to the motion for revocation of probation, admitting the allegations within it. The district court accepted Probst's admission and found by clear and convincing evidence that he had violated the terms and conditions of his probation as alleged. A disposition hearing took place on July 25. The district court found there were substantial and compelling reasons not to keep Probst on probation. Probst's probation was revoked. The district court proceeded to sentence Probst on count I (misdemeanor) to 30 days' imprisonment and a 1-year license revocation, with credit for time served on the revocation. On count II (felony), Probst was sentenced to 2 years' imprisonment, followed by 12 months' postrelease supervision, with credit for 205 days of time served. The sentences were to run concurrently to each other.

Probst appeals.

## ASSIGNMENTS OF ERROR

Probst claims the district court erred by (1) resentencing Probst on count I because it violated his constitutional protection against double jeopardy and (2) imposing an excessive sentence.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

## ANALYSIS

### DOUBLE JEOPARDY

Probst claims the district court erred by resentencing him for his conviction on count I in violation of double jeopardy principles. The State concedes that resentencing on count I was in error, noting that in 2017 Probst was sentenced to a $100 fine and a 1-year revocation of his driving privileges for this conviction, and that at the sentencing hearing on Probst's revocation of probation in 2019, the district court sentenced him to 30 days in jail for the same conviction. "Because the district court had already imposed a sentence upon Probst for that conviction, it was error for it to sentence him again." Brief for appellee at 6. We agree.

The Double Jeopardy Clauses of both the federal and the Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). We first note that it is clear that resentencing on count II was not a violation of double jeopardy principles. A probation revocation hearing is considered a continuation of the original prosecution for which probation was imposed--in which the purpose is to determine whether a defendant has breached a condition of his or her existing probation, not to convict that individual of a new offense. *In re Interest of Rebecca B.*, 280 Neb. 137, 783 N.W.2d 783 (2010). Violation of probation is not itself a crime or offense, and the court may impose a new sentence for the offense for which the offender was originally convicted. *Id.* Double jeopardy is not implicated in probation revocation proceedings because the proceedings are a continuation of the original underlying conviction. *Id.* See, also, *State v. Schuetz*, 18 Neb. App. 658, 790 N.W.2d 726 (2010).

The probation revocation proceedings here solely related to Probst's felony conviction and sentence on count II, and double jeopardy was not implicated in relation to that count. See, *In re Interest of Rebecca B., supra*; *State v. Schuetz, supra*. However, Probst's original sentence in 2017 on count I was for a separate misdemeanor conviction; he was sentenced to a $100 fine and a 1-year revocation of his driving privileges. Therefore, the imposition of a new sentence in 2019 constituted another punishment for the same offense. Double jeopardy barred Probst's resentencing under count I. The State argues that "Probst suffered no prejudice from this error because his 30 day sentence was served at the same time as his validly imposed 24 month sentence." Brief for appellee at 6. However, left uncorrected, that error would be a violation of Probst's fundamental rights and damage the integrity, reputation, and fairness of the judicial process. See *State v. Sierra,* 305 Neb. 249, 939 N.W.2d 808 (2020). We therefore vacate Probst's sentence on count I under the district court's sentencing order dated July 25, 2019.

EXCESSIVE SENTENCE

Probst assigns that the district court erred in imposing an excessive sentence (singular), and the argument section of his appellate brief is focused primarily on the district court's decision to order the maximum sentence on count II. We therefore limit our review to Probst's claim that his new sentence under count II is excessive.

Under count II, Probst was convicted of possession of meth in violation of Neb. Rev. Stat. § 28-416(3) (Supp. 2015), which is a Class IV felony under the same provision. See, also, Neb. Rev. Stat. § 28-405, Schedule II(c)(3) (Supp. 2015) (meth is controlled substance). At the time of his offense, a Class IV felony was punishable by up to 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine, or both; imprisonment was not required, but there was a minimum of 9 months' postrelease supervision if imprisonment was imposed. See Neb. Rev. Stat. § 28-105(1) (Supp. 2015). Probst's new sentence was 2 years' imprisonment, followed by 12 months' postrelease supervision, with credit for 205 days of time served. His sentence is within the statutory limits and will not be disturbed absent an abuse of discretion by the district court. See *State v. Garcia, supra*.

When imposing a sentence, the sentencing court customarily considers and applies the following relevant factors: the defendant's (1) age, (2) mentality, (3) education and experience, (4)

social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

A presentence investigation report (PSR) was compiled prior to Probst's sentencing in 2017. At the time Probst was resentenced, he was 37 years old. The PSR contained the circumstances of the 2016 offenses, Probst's criminal history, and his statement to the court in which he attributed his long history of illegal drug use to his "disease of addiction." On the Level of Service/Case Management Inventory, Probst scored overall as being a very high risk to the community and to recidivate.

According to the PSR, Probst has five prior charges for violent offenses out of state, for which dispositions are unknown. In Nebraska, Probst was convicted of littering, disorderly conduct, resisting arrest, criminal mischief (twice), violating a protection order, shoplifting, third degree domestic assault, carrying a concealed weapon, and introducing escape implements. Charges related to one 2015 incident for possession of a controlled substance, no drug tax stamp, and possession or use of drug paraphernalia were dismissed as part of the plea agreement in this action. Before his 2017 sentencing, Probst had been sentenced to probation one time, but it was revoked and he was resentenced to 1 year in jail. He had been sentenced to multiple terms of jail before. He had been in a gang, and had indicated during his presentence interview that he was still in contact with the gang.

A history of Probst's use of alcohol, marijuana, heroin, cocaine, meth, and pills was included in the PSR. He had been "distributing drugs to support his [heroin and cocaine] habit and obtained money for drugs by stealing." He reported being under the influence of a substance for all of his offenses. A 2017 evaluation reflected that Probst met diagnostic criteria for six different disorders. He was recommended to residential treatment and to obtain mental health counseling.

According to the PSR, prior to his sentencing in 2017, the longest Probst had been unemployed was from 2009 until 2016, due to his "addiction." During the hearing in June 2019, Probst's counsel told the district court that Probst was employed. In the past, Probst lived with friends who all "use[d] substances" and made it difficult for him to obtain and maintain sobriety. During the 2017 sentencing hearing, Probst's counsel said Probst had begun living with his girlfriend and her mother. Affidavits from a probation officer appearing in the record allege that in May 2019, the same girlfriend assumed responsibility and was cited for a marijuana pipe located where Probst was living.

During the hearing on July 17, 2019, Probst informed the district court that he was trying to get into a treatment facility. At the time of the hearing on July 25, an updated presentence investigation had not been conducted. However, the district court had the "two-inch file" for this case, and Probst agreed that the district court had enough information to proceed with sentencing. Probst's counsel informed the court that Probst had sent referrals to different treatment facilities and counsel had asked that Probst be placed on a "short-notice wait list" for a certain facility. Probst's counsel requested that Probst be given a "shorter sentence" with credit for time served. Probst personally told the court he was "clean" before coming "into this jail sentence."

Prior to imposing Probst's new sentence for count II, the district court reflected that Probst "just did horrible on probation," "likely" as a result of "[his] addiction." Probation had tried to help Probst with his addiction "to no avail." The district court found that there were substantial

and compelling reasons not to retain Probst on probation: (1) he had failed to comply with prior terms of probation in this case and (2) the risk was substantial that during a period of probation, he would engage in additional criminal conduct.

On appeal, Probst argues that the district court "failed to consider the nature and seriousness of [his] offense and [his] rehabilitative needs." Brief for appellant at 10. But the PSR included the circumstances of his 2016 offense for possession of meth as well as ample information regarding his history of substance abuse, diagnoses, and recommendations regarding his rehabilitative needs. The district court had that information available to it and the record supports that the court reviewed that information in the context of how the case had progressed. While Probst also notes that the record does not show that he was ever charged with any new law violations, he acknowledges his several custodial sanctions for illegal drug use.

Probst further asserts that sentencing him to the maximum term of incarceration "clearly interfered" with his ability to receive treatment; he was "taking the steps necessary to get treatment for his disease." *Id.* at 11-12. Despite apparently being on a waiting list for a treatment facility at the time of his resentencing, Probst's counsel told the district court that Probst did not wish to continue the hearing. The record shows that Probst himself had unfortunately interfered with his receiving treatment in the past. Moreover, as discussed previously, his probation for the instant case was marked by consistent and numerous sanctions for a variety of alleged probation violations. Probst also complains that his sentence was much higher than sentences imposed for similar offenses. However, the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. See *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019).

We note that in Probst's reply brief, he appears to assert that the district court failed to sufficiently state its reasoning on the record, as required by Neb. Rev. Stat. § 29-2204.02(3) (Supp. 2015), regarding its finding that the risk was substantial that during a period of probation, he would engage in additional criminal conduct. Citing § 29-2204.02(2)(c), Probst argues that standing alone, whether a defendant was successful on probation is not a substantial and compelling reason to sentence a defendant to imprisonment. However, the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). The State did not have an opportunity to respond to the arguments in Probst's reply brief. A reply brief cannot be used to raise new matters. See *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992). Therefore, we will not consider the new claims discussed in Probst's reply brief.

In summary, the record does not show that the district court relied on anything inappropriate or improper when resentencing Probst on count II. We conclude that Probst's sentence on count II did not amount to an abuse of discretion by the district court.

CONCLUSION

For the foregoing reasons, we vacate Probst's sentence for his conviction on count I contained in the district court's sentencing order dated July 25, 2019. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART, AND IN PART VACATED.